IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL LUIS SEPULVEDA-VEGA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 17-1835 (MEL)

**OPINION AND ORDER**

Pending before the court is Angel Luis Sepulveda-Vega's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF Nos. 1, 13. Plaintiff challenges the Commissioner's finding that he is not entitled to disability benefits following a redetermination review. Plaintiff alleges that the Administrative Law Judge ("the ALJ") erred in his decision finding that Plaintiff was not entitled to disability benefits, and that the redetermination review violated his Fifth Amendment procedural due process rights.

**I.    Procedural and Factual Background**

On June 27, 2011, Plaintiff filed an application for Social Security benefits alleging that on November 2, 2010 ("the onset date"), he became unable to work due to disability. Tr. 37.[1] Plaintiff was found disabled on February 10, 2012. Id. For several years, Plaintiff received benefits under the Social Security disability insurance program. ECF No. 13, at 5-6.

After an extensive fraud investigation conducted by the United States Department of Justice and the Social Security Administration's Office of the Inspector General ("OIG"), the

---
[1] "Tr." refers to the transcript of the record of proceedings.

Social Security Agency ("the SSA") notified Plaintiff, on December 26, 2013, that his benefits were suspended pending a redetermination of his entitlement to them. Tr. 37.

Plaintiff was provided with the opportunity to respond and he submitted additional evidence for consideration on January 28, 2014. Tr. 324, 346-48. In the redetermination review, the SSA disregarded evidence submitted by two sources, Dr. Jose R. Hernández-González ("Dr. Hernández") and non-attorney representative Mr. Samuel Torres-Crespo ("Mr. Torres-Crespo"), who had been criminally charged. Tr. 315-18, 574. On February 1, 2014, the SSA determined that Plaintiff was not disabled due to insufficient evidence. Tr. 319-31.

On March 3, 2014, Plaintiff appealed the termination decision; the termination was affirmed. Tr. 37. Thereafter, Plaintiff requested a hearing, which was held on August 16, 2016, before Administrative Law Judge Henry Kramzyk, ("the ALJ"). Tr. 52. Plaintiff submitted 90 pages of additional evidence before his hearing. Tr. 19-30, 37, 84-114, 159-72, 187-211, 213-27, 242-52.

On January 3, 2017, the ALJ issued a written decision finding that the evidence "did not support a finding of disability on February 10, 2012." Tr. 39. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. ECF No. 1, at 2-3. Plaintiff filed a Complaint on June 22, 2017. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 13, 16.

## II. The ALJ's Redetermination Decision

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court

"must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Rather than appealing an initial disability determination, Plaintiff appeals a redetermination decision. Under section 405(u), "The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). "Similar fault" is involved in a determination if "an incorrect or incomplete statement that is material to the determination is knowingly made" or "information that is material to the determination is knowingly concealed." Id. at § 405(u)(2). The SSA may have reason to believe fraud or similar fault was involved through an investigation by the OIG. See, e.g., 42 U.S.C. § 1320(a)(8)(l).

During a redetermination review, the Commissioner "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such

evidence." Id. at § 405(u)(1)(B). The adjudicator may consider existing evidence and any new and material evidence that does not involve fraud or similar fault. See HALLEX I-1-3-25(A)[2]. A beneficiary may submit additional evidence if it is "new, material, and related to the time period at issue." Id. at I-1-3-25(C)(4)(3).

The adjudicator then determines, based on the eligible evidence, whether the beneficiary qualified for benefits at the time of the application. Id. at I-1-3-25(C)(3). Should the Commissioner determine "that there is insufficient evidence to support such entitled, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3).

**C. Legal Analysis: The ALJ's Redetermination Decision**

First, Plaintiff makes an exhaustion of remedies argument that is not applicable to this matter. ECF No. 13, at 10-15. Plaintiff asks for a waiver to the "exhaustion" requirement to seek federal judicial relief pursuant to section 405(g). But, Plaintiff exhausted his administrative remedies by seeking Appeals Council review of the ALJ's decision; the argument regarding waiver of the exhaustion requirement is moot. ECF No.1, at 2-3.

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 41. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date, December 31, 2015. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had an annular tear, degenerative disc disease, a small central posterior soft disc protrusion, and depression between November 2,

---

[2] The Appeals Council defines its procedures and guiding principles in the Hearings, Appeals and Litigation manual, ("HALLEX"). While not entitled to deference, it illustrates the recommended approach ALJs and the Appeals Council take in redetermination cases. See Alicea-González v. Comm'r of Soc. Sec., Civ. No. 18-122, 2019 WL 4233925, at *2 (D.P.R. Sept. 6, 2019).

2010, and February 10, 2012. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 43. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the [RFC] to perform light, routine, lower stress work then. He would have required an assignment to work with reduced postural and environmental demands. Finally…the claimant would have benefited, during the period under consideration, from an assignment to work with no overhead reaching with either upper extremity.

Tr. 45. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform any past relevant work. Tr. 49. At step five, when considering Plaintiff's vocational factors, the ALJ found that Plaintiff was a young individual who was not illiterate, even though the claimant may not know how to read English. Tr. 49. The ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 77-83. The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: laundry worker, hand inspector, and housekeeping cleaner. Tr. 51. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Id.

Plaintiff challenges the ALJ's decision that Plaintiff was not disabled by arguing that because Dr. Hernández's opinion was "discredited" in Plaintiff's first disability application, it would be disingenuous for the ALJ to come to a different result when excluding the same evidence in a redetermination review.[3] ECF No. 13, at 5-7. Specifically, Plaintiff alleges that the ALJ's decision "is tantamount to an error of law as the original decision had already discredited the physician..." Id. at 6.

---

[3] The Court limits its analysis to Dr. Hernández because Plaintiff does not challenge the SSA's exclusion of evidence submitted by Mr. Torres-Crespo.

7

The standard under section 405(u) of the Social Security Act is whether, after evaluating the remaining evidence not excluded by fraud, and additional evidence, if submitted, Plaintiff was disabled under the regulations at the time he was originally allowed. See 42 U.S.C. § 405(u)(1)(B); HALLEX I-1-3-25(A). The ALJ correctly excluded evidence from Mr. Torres-Crespo and Dr. Hernández in making his decision. Tr. 38.

Plaintiff's assertion that the ALJ came to a different result while considering the same evidence from the first disability application is not supported by the facts. Plaintiff misstates the difference between an opinion that is given less weight, and an opinion that is disregarded. Dr. Hernández's opinion was not disregarded during the first disability application. On February 10, 2012, two disability determination service employees found Dr. Hernandez's opinion regarding Plaintiff's physical impairments "less persuasive" because they determined that the opinion was not supported by substantial evidence and relied "heavily on the subjective report of symptoms and limitations provided by the individual." Tr. 309-310. But, Dr. Hernández's opinion had an impact on the first disability application because his opinion was cited by the disability determination service employees when they determined Plaintiff's limitations resulting from his mental impairments. Tr. 301-03. Specifically, Dr. Hernández's opinion was used to determine that Plaintiff had a moderate emotional condition. Tr. 303.

In the redetermination review, the ALJ disregarded Dr. Hernández's opinion in the entirety. Tr. 38. So, Plaintiff's assertion that Dr. Hernández's opinion was given the same weight in the first disability application and the redetermination review is incorrect.

In addition to disregarding Dr. Hernández's opinion, the redetermination review also accepted, reviewed, and included new evidence Plaintiff submitted on January 28, 2014. Tr. 324, 329. Indeed, the ALJ cited new medical evidence from Dr. Robert Toro-Soto ("Dr. Toro")

regarding Plaintiff's depressive disorder and Dr. Jose M Perez García ("Dr. Perez") regarding Plaintiff's high blood pressure. Tr. 41, 43, 324. Further, the ALJ enlisted the help of a vocational expert to identify other work that Plaintiff could perform, existing in significant numbers in the national economy. Tr. 50-51. So, Plaintiff's claim that the ALJ came to a different result while considering the exact same evidence from the first disability application is meritless.

Plaintiff has only questioned the treatment of Dr. Hernández's opinion at the original determination; he has not actually challenged any of the ALJ's findings in the sequential process. Arias v. Comm'r of Soc. Sec., 70 F. App'x 595, 597 (1st Cir. 2003) ("arguments which could have been presented to the district court, but were not, generally are waived on appeal."). The ALJ properly disregarded Dr. Hernández's opinion, and considered new evidence submitted by Plaintiff and the vocational expert. The Court will turn to Plaintiff's due process arguments.

### III. Due Process

Plaintiff alleges his due process rights were violated in two ways. First, Plaintiff alleges that the SSA violated his due process rights by wrongfully "reopening" his case in violation of section 404.988. ECF No. 13, at 9. Second, Plaintiff alleges that the SSA violated his due process rights because the SSA did not prove fraud or similar fault was involved in his specific case, and he was not provided with an opportunity to challenge those fraud allegations. ECF No. 13, at 5-9.

**A. Legal Analysis: "Reopening" and "Redetermination"**

Plaintiff alleges that the SSA violated his due process rights when it failed to comply with section 404.988(c)(1) which provides that a final determination or decision may be reopened if the Commissioner finds that the determination was obtained by fraud or similar fault. 20 C.F.R. § 404.988(c)(1). Plaintiff argues that because the SSA reopened the case without an

individualized finding of fraud in the particular case, the SSA violated his due process rights. ECF No.13, at 9.

Plaintiff confuses the nuance between the terms "reopening" and "redetermination." In this case, the SSA initiated a redetermination review pursuant to section 405(u) of the Social Security Act which mandates the Commissioner "immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is **reason to believe** that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A) (emphasis added). Redeterminations exist separately from reopening procedures; the distinction between section 404.988 and section 405(u) of the Social Security Act is significant. See Robertson v. Berryhill, Civ. No. 3:16-3846, 2017 WL 1170873, at *13 (S.D.W. Va. Mar. 28, 2017). Because the OIG conducted the subsequent investigation into cases in which Mr. Torres-Crespo, Dr. Hernández, and others were involved, there was reason to believe fraud was involved in the application for benefits. See 42 U.S.C. § 1320a-8(l). As a result, the SSA was statutorily required to redetermine Plaintiff's benefits. See U.S.C. § 405(u)(2); HALLEX I-1-3-25(C)(4)(a) ("adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information or a referral based on information obtained during a criminal or other law enforcement investigation"). So, the "reopening" procedures of section 404.988(c)(1) are not applicable here and the SSA did not violate Plaintiff's due process rights in this claim by redetermining Plaintiff's benefits.

### B. Legal Analysis: Plaintiff's Lack of Opportunity to Challenge the SSA's Presumption of Fraud

Plaintiff alleges that the SSA violated his due process rights because the SSA applied an unlawful presumption that the medical evidence in Plaintiff's application was fraudulent because

10

evidence was provided by a physician who had been accused of fraud in other unrelated applications for disability benefits. ECF No. 13, at 11. Plaintiff alleges his due process rights were violated because he was unable to challenge the fraud allegations. Id. at 5-9. The SSA argues that the deprivation of Plaintiff's benefits did not depend on the belief of fraud in the case, but rather that other evidence in Plaintiff's record was insufficient to establish disability. See ECF No. 16, at 18-19.

Plaintiff raises a Fifth Amendment procedural due process claim. "[T]he interest of an individual in continued receipt of [disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Supreme Court set out a three-part balancing test in Mathews v. Eldridge the courts must use to evaluate procedural due process claims. Id. at 355. A court must weigh three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. The Mathews factors weigh as follows.

As to the first factor, the affected private interest, Plaintiff most likely has a substantial interest in continued receipt of disability benefits; erroneous termination may cause significant hardship. See id. at 342. To his detriment, Plaintiff did not offer examples of how significant the loss of his disability benefits was, but it can be assumed that the monetary loss affects his ability to provide for himself. But, Plaintiff does allege that the termination resulted in "pressures of having an overpayment pending." ECF No. 13, at 7. Additionally, "there may be a loss of dignity when the government terminates disability benefits on the basis of fraud or similar fault involved in an application." Picon-González v. Comm'r of Soc. Sec., Civ. No. 18-1016, 2019 WL

4187701, at *14 (D.P.R. Sept. 4, 2019). An association of fraud and the inability to challenge the government's declaration that there is "reason to believe" the beneficiary was involved in fraud may damage a person's reputation. See id.

As to the second factor, risk of erroneous deprivation of such interest, the SSA claims that there are adequate safeguards to mitigate the risk of erroneous deprivation. ECF No. 16, at 16-19. First, the SSA suggests that Plaintiff could establish a new entitlement to disability benefits by filing a new application. Id. at 16. The SSA also identifies three procedures that it believes would mitigate the risk of erroneous deprivation: beneficiaries may submit additional evidence for the redetermination review, a hearing on the evidence occurs, and the ALJ is impartial. Id. at 16-18.

The Court will address each safeguard in turn. First, filing a new application for disability benefits is a dubious safeguard against erroneous deprivation because beneficiaries must restart the entire process. Transcripts may be in the thousands of pages, claimants fill out detailed forms, and applicants must track down and turn over a plethora of medical records. See Picon-González, 2019 WL 4187701, at *14. Indeed, "[a] chance to start over cannot erase loss caused by the violation of one's constitutional rights." Id. at *16.

Second, the opportunity to submit additional evidence is a more accessible safeguard than filing a new application, but the process may be complex and difficult. Assembling medical records from years or decades prior is onerous. See Alicea-González v. Comm'r of Soc. Sec, Civ. No. 18-122, 2019 WL 4233925, at *11 (D.P.R. Sept. 6, 2019). "Many beneficiaries provide the only copies of their medical records to representatives during the initial claim, others may have lost their records, physicians may have destroyed old reports, and some plaintiffs may have foregone second opinions due to trust in their primary physician." Id.

Lastly, in this case, the hearing on the evidence before an impartial ALJ is not a robust safeguard because "the hearing is restricted to the accuracy of the admissible medical records and the SSA's conclusions." Rivera-Cepeda v. Comm'r of Soc. Sec., Civ No. 18-1092, 2019 WL 4201573, at *10 (D.P.R. Sept. 5, 2019). There may be a risk of erroneous deprivation because beneficiaries do not receive notice of the factual determinations detailing the reason to believe fraud or similar fault was involved in their application, and so they cannot challenge the type of evidence disregarded. See Alicea-González, 2019 WL 4233925, at *11-12. "When a party is improperly handicapped in disputing a preliminary issue, the overall outcome is also tainted." Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 798 (6th Cir. 2018). The risk of erroneous deprivation is "too high" any time a citizen is deprived of "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." Id. at 799; Alicea-González, 2019 WL 4233925, at *11.

As to the final Mathews factor, the government's interest, the SSA makes arguments about cost and administrative burdens. ECF No. 16, at 19-20. The SSA contends that if the Commissioner was required to make a specific finding of fraud or similar fault in all of the cases affected by Dr. Hernández, "there would be a substantial delay in the Commissioner's ability to process these cases." Id. at 19. But, the SSA's claim is unpersuasive because it is unclear "why an ALJ would be unable to review OIG evidence in addition to the complex and lengthy records they already endure." Rivera-Cepeda, 2019 WL 4201573, at *11. Also, the additional burden would most likely fall on the OIG investigators who would be required to explain why there is "reason to believe fraud or similar fault" was involved in an individual's application. Id.

The SSA also raises the issue that requiring specific findings in every redetermination case would thwart independent authorities, like the Department of Justice, of their authority "to

Lastly, in this case, the hearing on the evidence before an impartial ALJ is not a robust safeguard because "the hearing is restricted to the accuracy of the admissible medical records and the SSA's conclusions." Rivera-Cepeda v. Comm'r of Soc. Sec., Civ No. 18-1092, 2019 WL 4201573, at *10 (D.P.R. Sept. 5, 2019). There may be a risk of erroneous deprivation because beneficiaries do not receive notice of the factual determinations detailing the reason to believe fraud or similar fault was involved in their application, and so they cannot challenge the type of evidence disregarded. See Alicea-González, 2019 WL 4233925, at *11-12. "When a party is improperly handicapped in disputing a preliminary issue, the overall outcome is also tainted." Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 798 (6th Cir. 2018). The risk of erroneous deprivation is "too high" any time a citizen is deprived of "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." Id. at 799; Alicea-González, 2019 WL 4233925, at *11.

As to the final Mathews factor, the government's interest, the SSA makes arguments about cost and administrative burdens. ECF No. 16, at 19-20. The SSA contends that if the Commissioner was required to make a specific finding of fraud or similar fault in all of the cases affected by Dr. Hernández, "there would be a substantial delay in the Commissioner's ability to process these cases." Id. at 19. But, the SSA's claim is unpersuasive because it is unclear "why an ALJ would be unable to review OIG evidence in addition to the complex and lengthy records they already endure." Rivera-Cepeda, 2019 WL 4201573, at *11. Also, the additional burden would most likely fall on the OIG investigators who would be required to explain why there is "reason to believe fraud or similar fault" was involved in an individual's application. Id.

The SSA also raises the issue that requiring specific findings in every redetermination case would thwart independent authorities, like the Department of Justice, of their authority "to

identify and prosecute program fraud and render findings that can themselves serve as the basis for redeterminations." Id. at 20. While requiring specific findings would be an additional responsibility, it would not "strip away authority to investigate or prosecute." See Picon-González, 2019 WL 4187701, at *16.

On balance, the Mathews factors favor Plaintiff whose disability benefits were terminated after this particular OIG investigation led to a redetermination review. See Alicea-González, 2019 WL 4233925, at *11. The administrative burden on the SSA cannot stand up to the risks of erroneous deprivation. Plaintiff was denied the opportunity to challenge the OIG investigation and the application of the investigation's findings to his own medical record. See id. The SSA deemed Plaintiff's claim for disability benefits fraudulent without providing him the opportunity to rebut that assertion. See id.

## IV. Conclusion

Based on the foregoing analysis, the Court concludes that the Fifth Amendment Due Process clause requires the SSA to give Plaintiff the opportunity to challenge the application of fraud and similar fault to his case and the consequent disregard of entire medical reports. See Alicea-González, 2019 WL 4233925, at *11. The Commissioner's decision denying Plaintiff's disability claims is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2019.

s/Marcos E. López  
U.S. Magistrate Judge
